**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
══════════════════════════════════════

SIMPSON,

                              Petitioner,

              - v -                                    9:20-CV-36
                                                        (MAD/DJS)
MELECIO,

                              Respondent.

══════════════════════════════════════

**APPEARANCES:**                          **OF COUNSEL:**

JOHNNIE SIMPSON
Petitioner *Pro Se*
Hurley, New York 12443

HON. LETITIA JAMES                        PAUL B. LYONS, ESQ.
Attorney General for the State of New York    Assistant Attorney General
Attorney for Respondent
28 Liberty Street
New York, New York 10005

**DANIEL J. STEWART**
**United States Magistrate Judge**

### REPORT-RECOMMENDATION and ORDER[1]

     *Pro se* Petitioner Johnnie Simpson was convicted upon a guilty plea of Criminal

Possession of a Controlled Substance in the Third Degree. Dkt. No. 16-1, State Court

Record ("SR.") at pp. 1047-48.  He was sentenced to a term of imprisonment of six years

with two years of post-release supervision. SR. at p. 1048. Petitioner presently seeks a

---

[1] This matter was referred to the undersigned for a report-recommendation pursuant to 28 U.S.C. § 636(b) and
N.D.N.Y.L.R. 72.3(c).

Writ of *Habeas Corpus* pursuant to 28 U.S.C. § 2254 on five grounds: (1) he "was denied his constitutional right to effective assistance of counsel"; (2) defense counsel had "an actual conflict of interest that was not sufficiently explained to the defendant"; (3) "the suppression court failed to conduct an adequate inquiry into the actual conflict of interest"; (4) his "plea was rendered involuntary because he was denied the opportunity to retain conflict free counsel by the court"; and (5) "trial counsel's failure to file a speedy trial claim resulted in such prejudice to the defense that defendant's right to the effective assistance of counsel was violated." Dkt. No. 1, Petition ("Pet.") at p. 16. Respondent has filed a Memorandum of Law in Opposition to the Petition. Dkt. No. 14, Resp. Mem. of Law. Petitioner filed a Traverse in further support of the Petition. Dkt. No. 20 ("Trav."). For the reasons that follow, this Court recommends that the Petition be **denied.**

## I. BACKGROUND

On March 27, 2014, Petitioner was arrested after law enforcement searched Petitioner's person and found that he was unlawfully in possession "of an aggregate weight of one-eighth ounce or more" of cocaine. SR. at pp. 7-9, 711, 1047. He was arraigned before the Kingston City Court and remanded without bail. The grand jury voted an indictment against Petitioner on April 2, 2014. SR. at pp. 8-9. Petitioner was thereafter named in a two-count indictment charging him with Criminal Possession of a Controlled Substance in the Third Degree and Criminal Possession of a Controlled Substance in the Fourth Degree. SR. at p. 8.

During counsel's representation of Petitioner, it was determined that counsel's firm represented Matthew Vladich, the confidential informant ("CI") who participated in

a series of controlled buys with Petitioner prior to Petitioner's arrest, "for the purpose of arraignment and/or bail." SR. at pp. 236-48. Upon realizing that Mr. Vladich was the CI in Petitioner's case, the firm terminated its representation of Mr. Vladich. *Id.* The lower court became aware of the firm's representation of the CI and sought to explain how this would affect counsel's representation of Petitioner. SR. at p. 225-57. Upon next returning to court, Petitioner stated that he understood and expressed his interest in having counsel continue to represent him in the case. SR. at pp. 268-69.

On January 9, 2015, Petitioner pled guilty to Criminal Possession of a Controlled Substance in the Third Degree. SR. at p. 1123. As part of his plea, Petitioner waived his right to appeal. On April 15, 2015, Petitioner was sentenced to a term of imprisonment of six years in state prison, followed by two years of post-release supervision. SR. at p. 332, 1048. On the same day, Petitioner filed a *pro se* Notice of Appeal with the Ulster County Clerk. SR. at p. 344.

Despite Petitioner's waiver of his right to appeal, he appealed to the New York Appellate Division. SR. at pp. 797, 1151, 1183. The Appellate Division affirmed Petitioner's conviction on January 19, 2017. SR. at p. 605. The New York State Court of Appeals also denied Petitioner's leave to appeal. SR. at p. 637. Petitioner thereafter sought to challenge his conviction by motioning to vacate the judgment on May 15, 2017. SR. at p. 638. The trial court denied Petitioner's first CPL § 440.10 motion on September 18, 2017. SR. at p. 732. Petitioner applied to the Appellate Division for leave to appeal, SR. at p. 735, which the Appellate Division denied, SR. at p. 746. Petitioner sought re-argument, SR. at p. 747, which was also denied, SR. at p. 792. Petitioner later submitted

a *pro se* coram nobis motion, SR. at p. 793, as well as a second CPL § 440.10 motion to vacate his judgment, SR. at p. 837, both of which were denied by the Appellate Division, SR. at p. 833, 1008-11. The Appellate Division and the Court of Appeals also denied Petitioner's leave to appeal both motions. SR. at p. 836, 1213, 1216. Petitioner now seeks a Writ of *Habeas Corpus* pursuant to 28 U.S.C. § 2254. *See generally*, Pet. and Trav.

## II. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Petitioner bears the burden of proving by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Jones v. Vacco,* 126 F.3d 408, 415 (2d Cir. 1997); *Rivera v. New York*, 2003 WL 22234697, at *3 (S.D.N.Y. Aug. 28, 2003). A federal court may not grant *habeas* relief to a state prisoner on a claim unless the state court adjudicated the merits of the claim and such adjudication either:

> 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Hawkins v. Costello*, 460 F.3d 238, 242 (2d Cir. 2006).

The Second Circuit has summarized the application of the standard of review under AEDPA as follows:

> [u]nder AEDPA, we ask three questions to determine whether a federal court may grant habeas relief: 1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state

court ruled?  2) If so, was the state court's decision "contrary to" that established Supreme Court precedent?  3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Williams v. Taylor*, 529 U.S. 362 (2000) and *Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).  The standard of review under § 2254(d) is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt."  *Renico v. Lett*, 559 U.S. 766, 773 (2010).  "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

The phrase "clearly established Federal law" refers to "the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  A state court decision is "contrary to" established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by th[e] Court on a question of law or if the state court decides a case differently than th[e] Court has on a set of materially indistinguishable facts."  *Id.* at 413. A state court decision is an "unreasonable application" of  established Supreme Court precedent "if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.*  AEDPA also requires that "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. §

2254(e)(1); *see also DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005); *Boyette v. LeFevre*, 246 F.3d 76, 88 (2d Cir. 2001).

## III. DISCUSSION

### A. Petitioner's Conflict of Interest Claim

Petitioner raises several arguments alleging that trial counsel was confronted with a conflict of interest that interfered with his representation of Petitioner and that the lower court failed to properly make Petitioner aware of this conflict and act accordingly. First, Petitioner argues that counsel had "an actual conflict of interest that was not sufficiently explained to the defendant" because "counsel's law firm . . . represented the key witness against the defendant at some point during the . . . the legal proceedings." Pet. at p. 19. Second, Petitioner asserts that the "suppression court failed to conduct an adequate inquiry into the actual conflict of interest" because the "court failed to fully explain[] and make sure that . . . [Petitioner] understood the actual conflict of interest that [he] face[d] by keeping trial counsel as his attorney." *Id.* Third, Petitioner argues that his "plea was rendered involuntary because he was denied the opportunity to retain 'conflict free' counsel by the court." Pet. at p. 20. In support of this proposition, Petitioner asserts that "[t]he trial court fail[ed] to provide [him] with a sufficient amount of time to obtain new counsel once trial counsel's conflict was known." *Id.*

Counsel has "a duty to avoid conflicts of interest." *Strickland v. Washington*, 466 U.S. 668, 688 (1984) (citations omitted). "Where a constitutional right to counsel exists," the Sixth Amendment holds that this right includes the "right to representation that is free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271 (1981). "The right to

6

conflict-free counsel applies equally to appointed, and, as here, retained counsel." *Skinner v. Duncan*, 2003 U.S. Dist. LEXIS 10102 at \*41 (S.D.N.Y. June 17, 2003). Petitioner bears the burden of "show[ing] a conflict of interest by a preponderance of the evidence." *Triana v. United States*, 205 F.3d 36, 40 (2d Cir. 2000).

### 1. Trial Counsel's Alleged Conflict

Sometime prior to March 5, 2014, Matthew Vladich was arrested upon "belief that he was involved in a drug transaction." SR. at p. 237-38. At that time, Matthew offered to work as a confidential informant ("CI") for the police. SR. at p. 238. CI-Matthew participated in controlled buys with Petitioner on March 5 and March 12 of 2014. SR. at p. 239-40. Police arrested Petitioner for possession of cocaine on March 27, 2014. *Id.* On April 4, 2014, Petitioner was indicted on the charges. SR. at p. 240-41. CI-Matthew did not give testimony at the Grand Jury presentation against Petitioner. SR. at p. 241. Sometime between April and December of 2014, the police lost touch with CI-Matthew and eventually concluded that he was not going to assist the police further. *Id.* On December 3, 2014, police arrested Matthew for crimes related exclusively to what initially led to his cooperation. SR. at p. 242. That night, Matthew's brother, Jason Vladich, called counsel's firm. SR. at pp. 245-47. The firm had previously represented Jason in a completely unrelated, personal injury case. *Id.* Jason asked the firm to represent Matthew. *Id.* On December 4, 2014, attorneys from counsel's firm represented Matthew for purposes of arraignment and setting bail. *Id.* At roughly the same time on the morning of December 4, 2014, counsel represented Petitioner at his suppression

hearing. *Id.* "[R]ight after . . . arraignment," and upon realizing that Matthew was the CI in Petitioner's case, the firm withdrew from Matthew's case. SR. at pp. 245-48.

### 2. Any Conflict That Trial Counsel Had Was Properly Waived By Petitioner

"The category of unwaivable conflicts of interest is a 'very narrow' one." *United States v. Manuel Ramos*, 350 F. Supp. 2d 413, 420 (S.D.N.Y. 2004). In most cases, where an actual or potential conflict of interest exists, it is possible for a petitioner "to waive his [or her] right to conflict-free counsel in order to retain the attorney of his [or her] choice." *United States v. Schwarz*, 283 F.3d 76, 95 (2d Cir. 2002). The court may accept a petitioner's waiver of a conflict where the waiver is knowing and intelligent. *United States v. Manuel Ramos*, 350 F. Supp. 2d at 420.

In New York State, trial courts are "required to ascertain, on the record, whether the defendant has an awareness of the potential risks involved in a particular course and has knowingly chosen it." *Walker v. Zon*, 2009 WL 2132441, at *5 (citing *People v. Gomberg*, 342 N.E.2d 550 (1975)). While New York has no "prescribed catechism" to ensure that a defendant understands his or her choice, the court "must conduct a careful inquiry to effectively safeguard the defendant's rights." *Id.* (citations and internal quotation marks omitted). "[T]he principles of federalism underlying *habeas corpus* review preclude the Court from overruling state court procedures that do not violate clearly established constitutional law as determined by the United States," and no Supreme Court ruling has "undermine[d] the constitutionality of the procedures used in New York State's *Gomberg* inquiry." *Id.* (citations omitted). Consequently, Petitioner

may "waive his attorney's potential conflict of interest[] through appropriate constitutional procedure in New York state court." *Id.*

Here, when the court became aware of a possible conflict of interest on the part of Petitioner's counsel, the court asked counsel to speak about the issue in December of 2014. SR. at pp. 213-14. Counsel asked the court to adjourn to give counsel an opportunity to further discuss the conflict with Petitioner. SR. at p. 214. Approximately one month later, upon returning to court, the judge inquired into the extent of "what may or may not be a conflict of interest." SR. at p. 225. The judge asked counsel to place on the record any issues that may relate to the CI, at which time counsel stated that his firm represented the CI "solely for the purpose of arraignment and/or bail." SR. at pp. 236-48. Counsel explained that he had never spoken to the CI and that no information was conveyed to him from his firm other than that the CI was arraigned, entered a plea of not guilty, and had bail set, and then the firm withdrew from the case. SR. at p. 248.

After discussing the potential conflict with counsel, the following exchange ensued between the state court and Petitioner:

> THE COURT: . . . Mr. Simpson, . . . [d]o you understand all of what I'm saying and what [counsel] is saying at this point.
> THE DEFENDANT: Yes.
> THE COURT: -- concerning [counsel]'s representation, his offices representation, of [the CI]?
> THE DEFENDANT: Yes.

SR. at pp. 250-51. The court then explained to Petitioner the potential ramifications of counsel's firm's previous representation of the CI and described how the attorney-client privilege "could in some fashion impair possibly [counsel's] ability to effectively

represent" Petitioner by limiting the scope of the questions that counsel could ask the CI. SR. at p. 253. Petitioner repeatedly stated that he understood, and said that he had spoken to counsel and his firm about the issue. SR. at pp. 251, 254. The defense thereafter requested another adjournment for "a few days for [Petitioner] to review this [issue] perhaps with another attorney." SR. at p. 257. The court granted an extension of two weeks for Petitioner to inquire about the issue further. SR. at pp. 256-57.

Upon returning to court, Petitioner's decision regarding the matter was addressed:

THE COURT: I believe I advised the defendant that he has the choice of the attorney of his choice but he has to be aware of the potential conflict and I attempted . . . to explain to the defendant what the parameters of that conflict were. . . . [Petitioner], have you discussed that in detail with [counsel]?
THE DEFENDANT: Yep.
. . .
THE COURT: Do you want [counsel] to continue to represent you?
THE DEFENDANT: Yes.
THE COURT: Do you have any further questions for the Court or [counsel]?
THE DEFENDANT: No, sir.

SR. at pp. 268-69.

Thus, the record shows that the lower court properly ascertained whether Petitioner was aware of the potential risks involved in counsel's firm's prior representation of the CI. The issue was carefully inquired into by the court, which itself explained the potential ramifications of continued representation by counsel and granted adjournments to afford Petitioner ample time to discuss this issue with counsel and possibly seek alternative representation. After being made aware of the potential issue and its ramifications,

Petitioner knowingly and intelligently decided to continue having counsel represent him. Thus, Petitioner waived any potential conflict of interest on the part of counsel.[2]

### 3. Even If Petitioner's Waiver Was Not Proper, There Would Only Be A Potential Conflict That Did Not Result In Any Prejudice To Petitioner

#### a.  Trial Counsel Did Not Have An Actual Conflict

To prove the existence of an actual conflict of interest, Petitioner must demonstrate several factors.   First, Petitioner must establish that "during the course of the representation, the attorney's and defendant's interests diverge[d] with respect to a material factual or legal issue or to a course of action."  *Winkler v. Keane*, 7 F.3d 304, 307 (2d Cir. 1993) (citations and internal quotation marks omitted).   Additionally, Petitioner must show that there was an "adverse effect" resulting from the conflict by presenting evidence of "some plausible alternative defense strategy" that was not pursued by counsel.  *Mileto v. Philips*, 2007 U.S. Dist. LEXIS 45877, at *46 (N.D.N.Y. June 12, 2007) (citations and internal quotation marks omitted).   Finally, Petitioner must show "that the alternative defense strategy was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests."  *Id.* at *46 (citations and internal quotation marks omitted).  "[A]n actual conflict of interest . . . carries a presumption of prejudice."  *Id.* at *44 (citations omitted).

Where counsel has represented both a criminal defendant and a prosecution witness, the primary concern is that counsel may not effectively question the witness because counsel cannot use privileged information received from the client-witness.  *See*

---

[2] Each of Petitioner's conflict related claims fail because of his waiver of any potential conflict.

*Brownell v. Jones*, 1983 U.S. Dist. LEXIS 13539, at *10 (S.D.N.Y. Sep. 22, 1983). Here, defense counsel's firm represented the CI only at the arraignment and bail hearing, and thereafter withdrew from representation.   SR. at p. 1194.   In cases of prior, dual representation such as this one, counsel may be found to have an actual conflict of interest if counsel "has privileged information from the client-witness that is relevant to the criminal proceeding." *Brownell v. Jones*, 1983 U.S. Dist. LEXIS 13539, at *12. Nevertheless, "[p]rior representation of a cooperating witness does not necessarily give rise to a conflict warranting disqualification." *United States v. Liszewski*, 2006 U.S. Dist. LEXIS 59608, at *32 (E.D.N.Y. Aug. 16, 2006) (citations omitted).

    While it is true that there would be actual prejudice if counsel could not effectively cross-examine the CI because counsel was trying to avoid disclosure of confidential information learned as a result of his attorney-client relationship with the CI, *see United States v. Alberti*, 470 F.2d 878, 880-81 (2d Cir. 1972), this was not at issue here because the defense counsel never had the opportunity to cross examine the CI, both because the case never went to trial and because the CI was not available during the earlier proceedings.   Even if counsel had been able to cross examine the CI, it is also not clear what, if any, privileged information the firm would have had on the CI that would have prevented counsel from effectively cross-examining the CI without breaching his firm's attorney-client relationship with the CI.   *See Brownell v. Jones*, 1983 U.S. Dist. LEXIS 13539, at *15.   Thus, Petitioner has not demonstrated an actual conflict of interest.

12

### b. If Trial Counsel Had A Conflict, It Was Only A Potential Conflict and There Was No Prejudice To Petitioner

At most, Petitioner could argue that counsel labored under a potential conflict of interest because counsel's interests might have had the potential to diverge from Petitioner's interests if the case had gone to trial and if counsel had been given the opportunity to cross examine the CI. A potential conflict of interest exists where Petitioner's interests may place counsel under inconsistent duties in the future. *United States v. Kliti*, 156 F.3d 150, 153 n.3 (2d Cir. 1998) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 356 n.3 (1980)). "[A] potential conflict of interest . . . requires a finding of both deficient performance by counsel and prejudice." *Mileto v. Philips*, 2007 U.S. Dist. LEXIS 45877, at *44 (citations omitted). Here, since the CI never testified against Petitioner, and thus was never cross-examined by defense counsel, Petitioner cannot establish that he was prejudiced, in any way, by trial counsel's purported conflict of interest with the CI. *See United States v. Matera*, 489 F.3d 115, 125 (2d Cir. May 30, 2007) ("to overturn his conviction on the basis of his attorney's conflict of interest resulting in ineffective assistance of counsel, [the party] must at the very least show some possibility of prejudice he suffered by reason of the conflict.").

### B. Trial Counsel Did Not Provide Ineffective Assistance

To succeed on a claim for ineffective assistance of counsel, Petitioner must show that (1) "counsel's performance was deficient," and that (2) "the deficient performance prejudiced" him. *Strickland v. Washington*, 466 U.S. at 687.

First, to prove deficient performance, Petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. When the court considers "the reasonableness of the counsel's conduct," it must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," which is a highly deferential standard. *Id.* at 689. To defeat this presumption, Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "[T]he question is not whether counsel's actions were reasonable," but rather, "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

Second, to prove that prejudice has resulted from counsel's deficient performance, Petitioner must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. at 687. "It is not enough" for Petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, Petitioner must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* at 694. A reasonable probability is one that undermines confidence in the outcome of the case and makes it substantially likely that a different result would have occurred. *See id.*; *see also Jackson v. Conway*, 763 F.3d 115, 153 (2d Cir. 2014). "[I]n the context of a guilty plea, the [P]etitioner 'must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

"When reviewing a claim of ineffective assistance of counsel during plea bargaining, the federal court must apply a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt.'" *Burt v. Titlow*, 571 U.S. 12, 13 (2013).

Unless Petitioner can make both showings of deficient performance and prejudice, it cannot be said that his conviction "resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland v. Washington*, 466 U.S. at 687.

Petitioner argues that he received ineffective assistance of counsel as a result of counsel's failure to: (1) dismiss the indictment on speedy trial grounds, (2) provide the court certain information from the CI's brother, (3) move to suppress the arrest for lack of probable cause, and (4) conduct an adequate investigation.  Pet. at pp. 19-21, 23.

### 1.  Speedy Trial

As to Petitioner's first claim regarding counsel's alleged failure to seek dismissal of the indictment on speedy trial grounds, the court must determine "whether the . . . *federal Strickland* standard was met by trial counsel's failure to advance Petitioner's *state* law speedy trial rights." *Velez v. Lee*, 2017 U.S. Dist. LEXIS 53142, at *25 (E.D.N.Y. Apr. 6, 2017).

 "Although the failure [of counsel] to make a speedy trial motion may be sufficiently egregious to deprive [Petitioner] of meaningful representation, there must be proof that the motion [by counsel] would have been successful." *People v. Martin*, 116 A.D.3d 1166, 1167 (3d Dep't 2014); *see also People v. Devino*, 110 A.D.3d 1146 (3d

Dep't 2013).  New York courts use a five-factor test to determine whether counsel could

have made a successful speedy trial claim under state law, which considers:

> (1) the extent of the delay; (2) the reason for the delay; (3) the nature of the underlying charge; (4) whether or not there has been an extended period of pretrial incarceration; and (5) whether or not there is any indication that the defense has been impaired by reason of the delay.

*People v. Taranovich*, 373 N.Y.S.2d 79, 82 (1975).  In evaluating these factors, "no one

factor or combination of the factors . . . is necessarily decisive or determinative of the

speedy trial claim, but rather the particular case must be considered in light of all the

factors as they apply to it."  *Id.*  Nevertheless, courts have rejected speedy trial claims in

part where "[m]uch of the delay was attributable to the [petitioner], and was not the result

of dilatory tactics by the People."  *People v. Applewaite* , 192 A.D.2d 616, 617 (2d Dep't

1993).  Where a petitioner does "not have a meritorious claim with respect to either

his[/her] statutory or his[/her] constitutional speedy trial rights[,] . . . counsel cannot be

deemed ineffective for failing to raise meritless claims" and "[h]abeas corpus relief on

this ground is not warranted."  *Gorman v. Goord*, 2003 U.S. Dist. LEXIS 22591, at *24

(E.D.N.Y. Oct. 8, 2003).

To evaluate whether Petitioner has a meritorious claim, the Court first looks at the

first *Taranovich* factor regarding extent of the delay.  This first factor has been referenced

as a "'triggering mechanism because it cannot be said that a defendant is deprived of a

speedy trial if he was prosecuted with 'customary promptness.'"  *Brown v. Perez*, 2013

U.S. Dist. LEXIS 156749, at *47 (S.D.N.Y. Oct. 31, 2013) (quoting *Doggett v. United

States*, 505 U.S. 647, 652, (1992)); *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).

Nevertheless, the court has "steadfastly refused to set forth a *per se* period beyond which a criminal prosecution may not be pursued." *People v. Taranovich*, 373 N.Y.S.2d at 82. Here, Petitioner was arrested on March 27, 2014, and after a series of proceedings and adjournments, which were agreed upon in chambers or prior to scheduled appearances, Petitioner pled guilty on January 9, 2015. *See* SR. at pp. 689-90, 1123. Thus, there was a lapse of time of nine months and nine days, or 284 days, between Petitioner's arrest and his guilty plea. *See People v. Carrillo*, 191 A.D.2d 812, 812 (3d Dep't 1993) (considering the extent of the delay by counting the number of months between the defendant's arrest and trial). A lapse of nine months would not constitute a length of delay sufficient to justify a well-grounded speedy trial objection, as such cases are viewed as having been prosecuted with customary promptness. *Id.* (holding that defendant's right to a speedy trial was not violated because "there was *only* a period of 10 months between defendant's arrest and his trial" for two counts of Criminal Sale of a Controlled Substance in the Third Degree arising from the sale of cocaine to a confidential informant) (emphasis added). "[B]oth the Supreme Court and the Second Circuit have found that no constitutional speedy trial violation occurred in cases in which the period between arrest and trial was even longer than the [nine] months at issue here." *Koonce v. Connell*, 2011 U.S. Dist. LEXIS 36336, at *15 (W.D.N.Y. Apr. 1, 2011) (citations omitted). Thus, the Court finds that this first factor weighs against a speedy trial claim.

Moving to the second factor, the delay between Petitioner's arrest and the entering of his guilty plea was caused by a series of postponements on the part of Petitioner, including an adjournment so that Petitioner could consider a plea offer made by the

People, Petitioner's later rejection of this offer, adjournment for Petitioner to submit motions, Petitioner's request for a pretrial hearing, conferences held at Petitioner's request to discuss a potential conflict of interest involving Petitioner's counsel, and adjournment at Petitioner's request to discuss the conflict of interest. *See* SR. at p. 690. Moreover, the court has found that, where "a significant factor contributing to the delay was the need to determine whether it would be necessary to disqualify" counsel due to a conflict of interest, the resulting delay is justified due to the "practical difficulties occasioned by the complexities of the case and not from congestion of the calendar or bad faith or neglect on the part of the" prosecution or court. *United States v. Cain*, 671 F.3d 271, 297 (2d Cir. 2012). Thus, the reason for most of the delay fell on the part of Petitioner and does not favor a finding that Petitioner's constitutional rights were denied.

The third and fourth *Taranovich* factors require the Court to consider the nature of the underlying charges against Petitioner and determine "whether or not there has been an extended period of pretrial incarceration," respectively. *People v. Taranovich*, 373 N.Y.S.2d at 82. Here, Petitioner has been convicted of Criminal Possession of a Controlled Substance arising from his possession of cocaine and was released on bail pending trial. Thus, since Petitioner was not incarcerated between proceedings, this factor weighs against Petitioner's speedy trial claim because there was not an extended period of pretrial incarceration that would be sufficient to violate Petitioner's right to a speedy trial.

Finally, the Court must consider any prejudice to Petitioner resulting from counsel's alleged failure to assert a speedy trial violation. "The most serious concern here

18

is whether the defense has been impaired in any way." *Davis v. McLaughlin*, 122 F. Supp. 2d 437, 443 (S.D.N.Y. 2000). Petitioner asserts that he would not have signed a guilty plea deal had he been advised of the potential speedy trial issue. SR. at p. 688. Furthermore, Petitioner contends that "[t]rial counsel's failure to raise a speedy trial claim resulted in defendant's conviction as oppose[d] to the case being dismissed." Pet. at p. 20. Petitioner has failed to demonstrate with the requisite specificity, however, that any delay in his proceedings impaired his ability to present a defense. Petitioner has not made any indication, for example, that any necessary evidence for his case was destroyed, that any witnesses that would have testified no longer could do so, or that he would have received a shorter sentence had he proceeded to trial more rapidly. Thus, Petitioner has not shown any prejudice relating to his ability to present an adequate defense that resulted from a delay in his proceedings.

Overall, a consideration of the factors strongly indicates that Petitioner's right to a speedy trial was not violated. Thus, Petitioner's assertion that counsel failed to make a speedy trial motion does not constitute ineffective assistance. *See Boyd v. Hawk*, 965 F.Supp. 443, 450 (S.D.N.Y. 1997) (holding that counsel was not ineffective for failing to make a speedy trial motion that would have been unsuccessful). Even if counsel had moved for a speedy trial, it is unlikely that such a motion would have succeeded because the court likely would not have granted the motion. Petitioner thus cannot prevail in his ineffective assistance of counsel claim based on any speedy trial claims that Petitioner thinks that counsel should have made.

### 2.  Information Provided to Counsel From the CI's Brother

Moving to Petitioner's second claim regarding counsel's failure to provide the court certain information from the CI's brother, Petitioner stated that "counsel withheld from the court certain information provided to counsel by the CI's brother."  Pet. at p. 21; SR. at pp. 651-52, 663-66, 685-86.  Petitioner claims that counsel was ineffective for not for disclosing this issue at the time of his plea.  Pet. at p. 21.  Petitioner raised this issue in his state court 440 motion and the court denied relief.  SR. at  p. 733.  The state court made a factual finding that "[t]rial counsel had no first hand reliable information establishing that the informant testified falsely."  *Id.*  Under AEDPA this Court must "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'"  *Schriro v. Landrigan*, 550 U.S. 465, 473–74 (2007) (quoting 28 U.S.C. § 2254(e)(1)).  Petitioner has made no such showing here.  Counsel cannot be said to have acted ineffectively in not raising an argument when there is no evidence to support it.  *Ponder v. Levine*, 2004 WL 912868, at *2 (W.D.N.Y. Apr. 26, 2004); *Puello v. United States*, 2004 WL 42282, at *3 (S.D.N.Y. Jan. 7, 2004).

### 3.  Trial Counsel Properly Attempted To Suppress for Lack of Probable Cause

In Petitioner's third claim, he asserts that counsel erred in failing to move to suppress Petitioner's arrest for lack of probable cause.  Pet. at p. 23.

Counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."  *Wiggins v. Smith*, 539 U.S. 510, 521 (2003).  Nevertheless, while Petitioner "may not be pleased with the strategy

employed by his trial attorney, that alone is insufficient to establish his attorney's ineffectiveness." *United States v. Simmons*, 923 F.2d 934, 956 (2d Cir. 1991). A petitioner has failed "to show that counsel's performance fell below an objective standard of reasonableness" if he or she "has failed to show that counsel committed an error." *Jackson v. Kirkpatrick*, 2019 U.S. Dist. LEXIS 2623, at \*23 (E.D.N.Y. Jan. 4, 2019). In *Jackson v. Kirkpatrick*, the court rejected petitioner's claim of ineffective assistance of counsel, and explained that petitioner's claim that counsel had failed to attack the probable cause of petitioner's arrest failed because counsel moved for a suppression hearing, during which the probable cause to arrest petitioner was litigated and challenged by counsel. *See id.* Thus, the Court held that the petitioner could not show that counsel acted objectively unreasonable. *See id.*

Here, like in *Jackson v. Kirkpatrick*, Petitioner argues that he was "denied the effective assistance of counsel . . . due to trial counsel's failure to challenge the probable cause of defendant's arrest." Pet. at p. 23. Petitioner's assertions, however, contrast with counsel's actions during his representation of Petitioner. As recognized by the state court, trial counsel "enter[ed] into a Stipulation in Lieu of Motions in which it was agreed that a pre-trial *Dunaway* hearing would be held." SR. at p. 1010. The pre-trial *Huntley* hearing was scheduled to determine whether there was probable cause for the underlying arrest of Petitioner, and a *Dunaway* hearing was scheduled to determine whether evidence seized from Petitioner was the result of a search conducted without probable cause. SR. at p. 822. Thus, Counsel did exactly what was asked of him by Petitioner in requesting that hearings be conducted regarding the probable cause of Petitioner's arrest and any

evidence seized from Petitioner.  Moreover, while these hearing were held on October 20, 2014, Petitioner entered a guilty plea on January 5th, 2015, before a decision was reached regarding probable cause.  *Id.*  Because counsel requested a *Dunaway* hearing, but Petitioner entered a guilty plea deal before the court entered a decision regarding probable cause, the guilty plea effectively established probable cause for the arrest as a matter of law.  *See Johnson v. City of N.Y.*, 551 F. App'x 14, 15 (2d Cir. 2014).

Thus, Petitioner's argument that counsel failed "to challenge the probable cause" of Petitioner's arrest is without merit.  Pet. at p. 23.

### 4.  The Adequacy of Counsel's Investigation Was Not Ineffective

Finally, Petitioner claims that counsel failed to conduct an adequate investigation.

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."  *Brewer v. Lape*, 2010 U.S. Dist. LEXIS 94812, at *87 (S.D.N.Y. June 11, 2010) (quoting *Strickland v. Washington*, 466 U.S. at 691) (brackets in original).  Consequently, "[a] failure by trial counsel to investigate may properly serve as the basis for an ineffective assistance of counsel claim." *Steinhilber v. Kirkpatrick*, 2020 U.S. Dist. LEXIS 252733, at *70 (S.D.N.Y. Aug. 21, 2020) (citing *Strickland v. Washington*, 466 U.S. at 690-91).  To assert an ineffective assistance of counsel claim based on a failure to investigate, Petitioner "must do more than make vague, conclusory, or speculative claims as to what evidence could have been precluded by further investigation."  *Ortiz v. Heath*, 2011 U.S. Dist. LEXIS 37336, at *30 (E.D.N.Y. Apr. 6, 2011) (quotations omitted).  A petitioner's "[m]ere speculation that the investigation may lead to a different outcome is insufficient" to prove ineffective

assistance of counsel. *Id.* (citations omitted). Rather, "[a]n attorney's failure to investigate is considered reasonable unless there is some indication that the investigation would have changed the result of the preceding," which is a highly deferential standard. *Mocombe v. United States*, 2005 U.S. Dist. LEXIS 5368, at *7-8 (S.D.N.Y. Mar. 31, 2005) (citations omitted).

Here, the state court held that Petitioner had failed to establish "what additional investigation could have been conducted" or that any further investigation "would have uncovered favorable evidence." SR. at p. 1045. Furthermore, Petitioner has not pointed to any new evidence that would support a finding that counsel conducted an inadequate investigation in Petitioner's case. *See generally*, Pet. and Trav. Petitioner cannot merely make "conclusory allegations regarding [counsel's] failure to conduct an investigation," without showing "what evidence an investigation would have yielded and the benefit of such evidence to [P]etitioner's case," as such assertions are "insufficient to overcome the presumption that counsel offered effective representation." *Brewer v. Lape*, 2010 U.S. Dist. LEXIS 94812, at *8 (citations omitted). Thus, Petitioner cannot prevail on his ineffective assistance of counsel claim based on the adequacy of counsel's investigation.

For these reasons, the Court recommends that Petitioner's ineffective assistance of counsel claim be dismissed.

### C. Petitioner's Guilty Plea Was Neither Coerced Nor Involuntary

Petitioner also alleges that counsel was ineffective because counsel "coerced" Petitioner into accepting a guilty plea. Pet. at p. 23. In addition, Petitioner alleges that his guilty plea was involuntary. *Id.* at pp. 20, 23.

23

A guilty plea must be voluntarily, intelligently, and competently given to be considered constitutionally valid. *See Bousley v. United States*, 523 U.S. 614, 618 (1998) (citations omitted). Upon reviewing a plea, the court is typically limited to considering whether the plea was voluntarily and knowingly entered with the advice of counsel. *See United States v. Broce*, 488 U.S. 563, 569 (1989); *see also Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

While Petitioner has claimed that his plea was involuntarily entered and that counsel coerced him into pleading guilty, Petitioner's statements at the plea hearing contradict these allegations. Since "[s]olemn declarations in open court carry a strong presumption of verity," statements made by Petitioner at his plea hearing constitute a "formidable barrier" that cannot easily be attacked in subsequent hearings. *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Id.* In particular, because Petitioner "has explicitly stated in his allocution that he fully understands the consequences of his plea and that he has chosen to plead guilty after a thorough consultation with . . . [counsel], a district court on habeas review may rely on . . . [P]etitioner's sworn statements and hold him to them." *Bryant v. Superintendent, E. Corr. Facility*, 2020 WL 8413423, at *4 (N.D.N.Y. Oct. 27, 2020), *report and recommendation adopted*, 2021 WL 365852 (N.D.N.Y. Feb. 3, 2021) (citations and internal quotation marks omitted); *see also Vargas v. United* States, 2007 U.S. Dist. LEXIS 60214, 2007 WL 2246004, at *7 (E.D.N.Y. July 31, 2007) ("In reviewing a habeas petition, a district court is entitled to rely upon a

petitioner's statements, made under oath and in open court at the time his plea is accepted.").

Here, the state court record indicates that, after being placed under oath, Petitioner stated that he had consulted with counsel regarding his plea and that he was satisfied with counsel's representation.  SR. at pp. 704-05.  He also assured the court that he was not being coerced into entering a plea:

> THE COURT: Has anyone anywhere made any other promises to you to induce you or persuade you to enter this plea other than what the Court has said?
> THE DEFENDANT: No, sir.
> THE COURT: Has anyone threatened you, forced you, or coerced you to take this plea· bargain?
> THE DEFENDANT: No, sir.
> THE COURT: And when I ask those two questions, sir, I mean anyone anywhere, any member of the DA's office, any police officer, your own attorney, or this Court done anything to force you to plead guilty?
> THE DEFENDANT: No, sir.
> THE COURT: Are you telling the Court that your decision to plead guilty is one that you're making voluntarily?
> THE DEFENDANT: Yes.
> THE COURT: Have you had sufficient time to speak to your attorney about this plea?
> THE DEFENDANT: Yes.
> THE COURT: Are you satisfied with his representation of you?
> THE DEFENDANT: Yes.

*Id.*  After further discussing the repercussions of Petitioner entering a guilty plea, the court later asked the same questions a second time regarding whether anyone had made any promises to Petitioner, and/or whether anyone had forced, threatened, or coerced Petitioner to plead guilty, to which Petitioner once again responded that no one had made him any promises, nor forced, threatened, or coerced him to plead guilty.  SR. at p. 711.  Thus, Petitioner's statements made under oath during the entering of his plea contradict

25

his current assertions that he was dissatisfied with counsel and that counsel coerced him into entering his plea of guilty. *See Linares v. Smith*, 2020 WL 3545119, at *6 (E.D.N.Y. June 30, 2020) ("Petitioner's statements regarding coercion are refuted by his assurances during the plea colloquy that he was satisfied with counsel's services, that he had not been threatened or forced by anyone, . . . to enter the plea, and that he was pleading voluntarily and of his own free will."); *see also Adames v. United States*, 171 F.3d 728, 732 (2d Cir. 1999) (holding that a "defendant's self-inculpatory statements made under oath at his plea allocution . . . are generally treated as conclusive in the face of defendant's later attempt to contradict them").

### D. Petitioner Did Not Properly Withdraw His Guilty Plea

Petitioner also alleges that the trial court violated his "constitutional right to due process when it failed to allow the [Petitioner] or his trial attorney to state the reason for [Petitioner's] request to withdraw his guilty plea." Pet. at p. 22.

While Petitioner entered a guilty plea on January 9, 2015, SR. at p. 1123, Petitioner asserts that, on March 11, 2015, he "made a motion through his attorney to withdraw his guilty plea" and "[t]he court adjourned the matter to hold a hearing to determine . . . the reason why [Petitioner] wanted to withdraw the plea at the next court appearance." Pet. at p. 22. When Petitioner next appeared in court, he asserts that "the court made no mention of [Petitioner's] motion to withdraw his plea and just moved forward and sentenced [Petitioner] without any further inquiry as to why the [Petitioner] had made the motion to withdraw his guilty plea." *Id.*

This claim, however, is contested by the holdings of the lower courts.  The 440-court held that, "[c]ontrary to the [Petitioner's] contention, [Petitioner] did not make a motion to withdraw his plea during the proceedings of March 11, 2015." SR 1044.  These "determination[s] of . . . factual issue[s] made by [the] State Court shall be presumed to be correct," unless Petitioner can rebut these determinations by clear and convincing evidence.  28 U.S.C. § 2254(e).  *See Majid v. Portuondo*, 428 F.3d 112, 125 (2d Cir. 2005) (citations omitted).  Since Petitioner has not provided sufficient evidence to rebut the factual findings of the State Court, the Court finds that Petitioner's argument that he sought to withdraw his guilty plea fails.

### E. Appellate Counsel Did Not Provide Ineffective Assistance

Petitioner also alleges that appellate counsel was ineffective in failing to raise a claim for ineffective assistance of trial counsel based on trial counsel's "failure to protect [P]etitioner's right under New York State Criminal Procedure Law § 690.40 pursuant to an illegal search and seizure which resulted in an unlawful arrest."  Pet. at p. 24.

"A claim for ineffective assistance of appellate counsel is evaluated upon the same standard as is a claim of ineffective assistance of trial counsel."  *Hall v. Conway*, 630 F. Supp. 2d 283, 293 (W.D.N.Y. 2009) (citing *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994)).  Thus, to show ineffective assistance of appellate counsel, Petitioner "must prove both that (1) appellate counsel acted objectively unreasonably in failing to raise a particular issue on appeal, and (2) absent counsel's deficient performance, there was a reasonable probability that [his] appeal would have been successful before the state's highest court."  *Smalls v. McGinnis*, 2004 U.S. Dist. LEXIS 15480, at *52 (S.D.N.Y. Aug.

10, 2004) (citations omitted).  Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citations omitted).  Petitioner "may establish constitutionally inadequate performance only by showing that appellate counsel 'omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.'" *Smalls v. McGinnis*, 2004 U.S. Dist. LEXIS 15480, at \*55 (citations omitted).

First, as previously explained, trial counsel did exactly what Petitioner asked him to do by requesting hearings regarding the probable cause of Petitioner's arrest and any evidence seized from Petitioner, but Petitioner entered a guilty plea before the court entered a decision regarding probable cause.  *See Johnson v. City of N.Y.*, 551 F. App'x at 15.  Thus, Petitioner's argument that trial counsel failed "to challenge the probable cause," Pet. at p. 23, of Petitioner's arrest is without merit, and appellate counsel's recognition of the inherent weakness in this argument does not render appellate counsel ineffective for not raising the argument on appeal.  *See James v. Artus*, 2005 U.S. Dist. LEXIS 6402, at \*71 (S.D.N.Y. Apr. 15, 2005) (stating that "[a]ppellate counsel cannot be ineffective for failing to raise a meritless claim on appeal.") (citations omitted).

Moreover, Petitioner argued in his coram nobis motion that "there was no probable cause" for his "warrantless arrest."  SR. at pp. 808, 815-20.  Petitioner also asserted that appellate counsel failed to argue on appeal that trial counsel was ineffective in not raising this argument.  *Id.*  The Appellate Division, Third Department, upon review of Petitioner's motion, denied it without opinion.  SR. at p. 833.  Accordingly, the Court

finds that Petitioner was not prejudiced by appellate counsel's decision to forego Petitioner's probable cause/warrantless arrest claim because petitioner had raised this issue himself and the argument was denied by the court. *See Smalls v. McGinnis*, 2004 U.S. Dist. LEXIS 15480, at *99 (holding petitioner was not prejudiced by appellate counsel's decision to forego petitioner's claim that petitioner was arrested and searched without probable cause and that the property seized should be suppressed because petitioner had raised the claim in his *pro se* brief and it was denied by the court as without merit); *see also Hayes v. Coombe*, 1996 U.S. Dist. LEXIS 16586 at *6 (S.D.N.Y. Nov. 7, 1996) ("Petitioner has not shown that he was prejudiced by appellate counsel's omission. Petitioner raised [the omitted] claim in his own *pro se* brief to the Appellate Division, and the Appellate Division considered and rejected it."), *aff'd*, 142 F.3d 517 (2d Cir. 1998), *cert. denied*, 525 U.S. 1108.

### F. Petitioner's Perjury Claim Is Unsubstantiated

Petitioner asserts that one of the prosecutor's witnesses committed perjury during the proceedings. Pet. at p. 18. In support of this assertion, Petitioner claims that, "[d]uring the court proceeding . . . officer Eric Van Allen, the people's witness[,] . . . committed . . . material forms of perjury that prejudiced" Petitioner. *Id.* at p. 22.

"The petitioner in a *habeas corpus* action carries the burden of proving, by a preponderance of the evidence, the knowing use of perjured testimony at trial." *Vickers v. Barling*, 1978 U.S. Dist. LEXIS 18261, at *6 (S.D.N.Y. Apr. 20, 1978) (citations omitted). "General allegations of perjury, unsupported by fact, impose no duty upon the court to conduct an independent evidentiary hearing." *Id.* (citations omitted).

Here, Petitioner fails to adequately allege what the officer would have lied about. *See generally* Pet. and Trav.  The Court finds inadequate Petitioner's claim that "Office Van Allen failed to inform the court that defendant asked for a[n] attorney." Pet. at p. 22. While Office Van Allen testified during his direct examination at the suppression hearing that Petitioner had expressed a "willingness to waive" his *Miranda* rights and had not indicated that he would like "the assistance of an attorney," SR. at pp. 113-114, defense counsel did not seek to rebut this information by questioning Office Van Allen on the subject during his cross examination, *see generally* SR. at pp. 119-159.  Moreover, without further evidence, Petitioner's general, unsubstantiated allegation of perjury is conclusory and cannot be the basis for habeas relief.

Additionally, in connection with Petitioner's perjury claim, Petitioner requested that the court require "Officer Nace to file an affidavit on the subject matter since he was present at the time of the conversation." Pet. at p. 22.  The Court notes that Officer Nace was available to testify at the pretrial hearing regarding Officer Van Allen's alleged perjury, but was not called to testify by counsel.  "The decision to call or bypass particular witnesses is peculiarly a question of trial strategy . . . which courts will practically never second-guess," and the Court refuses to stray from this well-established standard here. *United States ex rel. Walker v. Henderson*, 492 F.2d 1311, 1314 (2d Cir. 1974).

### G. Petitioner's Affirmation Request Is Denied

Finally, Petitioner argues that "trial counsel should be ordered to [submit] an affidavit responding to the allegations in the motion." Pet. at p. 23.  Petitioner asserts

that, without trial counsel's affidavit, he cannot "make a clear record necessary for the court to adequately, effectively and meaningfully determine [his] motion." *Id.*

Petitioner's request for an affidavit from trial counsel was initially denied because discovery is not authorized on a 440 motion. SR. at p. 1046. In so holding, the lower court recognized that there is "no constitutional right or common-law right to discovery," as "[d]iscovery is authorized and circumscribed by statute." *People v. Torres*, 712 N.Y.S.2d 349, 350 (Sup. Ct. 2000). Since there are also "no discovery provisions under the Criminal Procedure Law for motions under CPL article 440," *Id.* (citations omitted), the trial court did not unreasonably apply clearly established law in denying Petitioner's request for an affidavit from trial counsel on his 440 motion. Regardless, this claim is not cognizable, as Petitioner requests relief under state statutory law and "federal *habeas corpus* relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 766 (1990).

Additionally, to the extent that Petitioner is asking for additional discovery to supplement the state court record, Petitioner has made no attempt to articulate why and how any additional discovery would support his petition for *habeas corpus*, and thus Petitioner has not met his burden of proof. *See Capalbo v. United States*, 2012 U.S. Dist. LEXIS 24005, at *11 (S.D.N.Y. Feb. 24, 2012).

## IV. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Petition (Dkt. No. 1) be **DENIED** and **DISMISSED**; and it is further

**RECOMMENDED**, that no Certificate of Appealability ("COA") be issued because Petitioner has failed to make "a substantial showing of the denial of a constitutional right" as required by 28 U.S.C. § 2253(c)(2);[3] and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72 & 6(a).

Date:  June 13, 2022
      Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge

---

[3] *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see also Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that, if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation").